Royal Meat Products Company, et al., Respondents, v. Kansas City, Missouri, et al., Appellants.—214 S. W. 2d 713.

Kansas City Court of Appeals. Opinion delivered November 8, 1948.

*David M. Proctor* and *Benj. M. Powers* for appellants.

*William G. Boatright, Jules E. Kohn* and *Ralph J. Tucker* for respondents.

SPERRY, C.—This is an appeal from the judgment of the circuit court of Jackson County, in a certiorari proceeding to review the action of the board of zoning adjustment of Kansas City, in which said board ordered the respondent, Royal Meat Products Company,

to cease and desist from the manufacture of sausage and meat products on the property now occupied by it. The judgment was for respondents and set aside the order of the board of zoning adjustment, and permanently enjoined the city and its named officials, appellants, from interfering with the use of the property for such purposes.

From this judgment Kansas City and its officials have appealed.

The property in question is referred to as 707 and 709 Linwood Boulevard. In October, 1923, the Feinberg Kosher Sausage Company acquired a three year lease, with option to purchase, on 709 Linwood Boulevard, and in November, 1926, the fee title was acquired by A. G. Feinberg. In 1931 the Feinberg Kosher Sausage Company, a Missouri corporation, was organized, having acquired the assets and business of the first Feinberg Kosher Sausage Company, a Kansas corporation, and continued business at 709 Linwood Boulevard. In April, 1934, Anna Feinberg acquired 707 Linwood Boulevard, and the Feinberg Kosher Sausage Company used this property in connection with 709 Linwood Boulevard. In March, 1937, Feinberg Kosher Sausage Company of Missouri, Inc., was organized and acquired the business of the former Feinberg Kosher Sausage Company, a Missouri corporation, but in April, 1937, the predecessor, Feinberg Kosher Sausage Company, a Missouri corporation, acquired the title to 707 and 709 Linwood Boulevard. In July, 1942, Feinberg Kosher Sausage Company of Missouri, Inc., changed its name to Royal Meat Products Company, which now holds a lease upon the property at 707-709 Linwood Boulevard and is and has been in exclusive possession and use of the said property, manufacturing sausage and meat products, and pays as rental thereon the sum of $6000 per year.

In October, 1923, immediately after the execution of the original lease, the manufacture of sausage was commenced in the property at 709 Linwood Boulevard. A delicatessen store was conducted in the front part of the property, in which store some of the sausage manufactured was sold and the remainder was sold to dealers. When the property at 707 Linwood Boulevard was acquired, the manufacture of sausage was conducted in that property also. The said property has been designed and arranged for the manufacture of sausage and meat products; it is a government inspected plant; the beef brought into the said plant is purchased from government inspected slaughter and packing houses; and no animals are or ever have been slaughtered by respondents.

From June 4, 1923 to July 14, 1941, Kansas City Zoning Ordinance No. 45608 was in full force and effect. The property in question was zoned for a U-3(b) use district, known generally as a retail business district, but said ordinance further provided that property in a U-3(b) district could be used for any use described in a Class U-4 district under certain conditions. The text of Section (b) of said Zoning Ordinance was as follows:

"  (b)  In a class U-3-B district no building or premises shall
be used and no building shall be erected, altered or enlarged which
is arranged, intended or designed to be used except for a Class
U-1, class U-2 or class U-3, use, provided, however, that in a class
U-3-B district a building or premises may be used for any use in-
cluded in class U-4 uses, *provided such use or operation is carried
on entirely within a substantial building completely enclosed with
walls and roof, and provided further that such use is not of such
nature as to become offensive or noxious or adversely affect the
appropriate use of neighboring property.*"  (Emphasis ours).

Among the uses permitted in a U-4 district were sausage manu-
facture and manufacture of food products.

In 1924 a complaint was made by neighbors regarding the use of
this property as a violation of the said 1923 zoning ordinance.  A
hearing and investigation by and before the board of zoning adjust-
ment resulted in a finding against complainants.  No appeal was
taken.

On July 14, 1941, the 1923 zoning ordinance was repealed and
sixteen new sections were enacted in lieu thereof.  Under the 1941
ordinance property located in a class U-3(b) district could be used
for a class U-4 purpose provided said property had been and was
being lawfully so used at the time said ordinance was enacted, and
that such use could be changed to another nonconforming use of the
same or higher classification.

The 1941 zoning ordinance further provided, in Section 55-3.6 (c),
that in connection with every building or structure used for manufac-
turing there should be provided and maintained adequate space for
loading and unloading so as to avoid undue interference with public
streets and alleys.

In 1943, two vacant lots adjoining the property at 707 Linwood
Boulevard were acquired for the purpose of loading and unloading
and to relieve congestion in the alley behind the plant, which prop-
erty has been so used since the date of acquisition.

On November 29, 1944, respondent received written notice from the
board of zoning adjustment that a Mrs. A. Fromhold and others
had filed a complaint contending that the subject property, although
located in a retail business district, unlawfully was being used for
industrial purposes.

On December 6, 1944, the board continued the hearing on the
Fromhold complaint until after the duration of the war, provided
respondent Royal Meat Products Company's "activities are confined
to 707 and 709 Linwood Boulevard and further provided that your
operation be conducted with a minimum of inconvenience to the
neighbors."  The board also made the following order:

"  In clarification of its previous action the Board held that the
erection of a building or shed to be used, during said period,

solely to enclose your loading and unloading activities, would be allowed as an accessory use upon the property adjoining 707-709 Linwood Boulevard, now zoned as a U-3(b) District. This, in the opinion of the Board, would not constitute an enlargment of your principal use providing no machinery of any kind be installed nor any use other than loading and unloading be conducted within such building or shed. * * * ''

On August 26, 1946, respondent Royal Meat Products Company was notified by said board that the hearing, which had been continued, would be held on December 10, 1946. Said hearing was held and on March 7, 1947, the board issued the following order to respondent:

'' * * * It is therefore ordered that the Royal Meat Products Company, present owner and occupant of said premises, shall desist from the use of said premises for the purpose of manufacturing of sausage and meat products.''

The record discloses that plaintiff began business some twenty-four years ago, as a small concern, and that it has grown until it now has seventy-five or more employees and does an annual business of several hundred thousand dollars. The evidence also discloses that the area in which this business is located is also the home location of a number of large business concerns engaged in manufacturing foods and processing milk; that many large trucks are used in hauling meat to and from plaintiff's factory; and that many large trucks are used by other business establishments in the neighborhood. There was substantial evidence tending to prove that disagreeable odors and disturbing noises emanate from respondent's premises; that large twenty ton trucks are washed on plaintiff's lot and in the alley, and that blood and meat drippings therefrom remain in the alleys and on the sidewalk, causing a revolting and unsanitary condition to prevail; that bones are carried from plaintiff's premises by dogs and are strewn on neighboring property where they fester and are covered with flies; that these conditions cause rats to infest the area, burrowing in lawns and under sidewalks and basement walls; and that bones are stored outside of building, on the unloading and loading dock. Contradictory thereof, certain government employed inspectors stationed at this factory gave evidence to the effect that the premises were kept clean, both inside and outside; that such unsanitary conditions as were complained of by many residents of the neighborhood could not and did not prevail as a result of plaintiff's conduct of its business; and that no bones or other products were ever stored outside of the building.

Respondent has moved that this cause be transferred to the Supreme Court for the reason, as alleged, that the amount involved is more than $7,500. This motion was ordered taken with the case.

The motion should be and is hereby overruled. The sole question presented on this appeal is one of construction of an ordinance of

Kansas City, and, if construed contrary to the views entertained by respondent, there is no showing that it would suffer a loss in excess of $7,500. So far as the property itself is concerned, there is no showing that it would not be leased or used for some purpose other than meat processing for an amount equal to $6,000 per annum; and while the business being now conducted amounts to several hundred thousand dollars annually, it may be operating at a loss, so far as this record is concerned. State ex rel. Lamm v. Mid-State Serum Company, 265 S. W. 878, l. c. 879.

The board found that the zoning ordinance of 1941 was being violated as follows:

"7. That said building at 709 Linwood Blvd. has been devoted to such non-conforming use and its type of operations changed and enlarged and has been extended upon property other than the lot occupied for such use on July 14, 1941, without permit therefor from the Board of Zoning Adjustment.

"8. That the use of said property, as extended, is not carried on entirely within a substantial building completely enclosed with walls and roof, and is now of a nature as to become offensive and noxious, and to adversely affect the appropriate use of neighboring property."

It is noted that the practices charged and found to be in violation of the zoning ordinances are those prohibited under the provisions of Section U-3 (b) of Ordinance No. 45608, of 1923, which ordinance was repealed on July 14, 1941, when an entire new code was enacted in lieu thereof. The 1941 ordinance contains no such language as we have emphasized in the 1923 ordinance, but Section 55-3.13 thereof provides: "Non-conforming Uses. A non-conforming use existing lawfully at the time of the passage of this ordinance may be continued, except as hereinafter provided. * * * " The exceptions mentioned are not material.

Analysis of the context of paragraphs 7 and 8, supra, of the findings of the board, shows that the alleged change and enlargement of respondent's business, and the extension thereof to additional property, has occurred *since* 1941. This hearing was begun in 1944, continued, and finally finished in 1947. The evidence dealt with conditions as of and immediately prior to the time the hearing was held. There is no evidence in the record from which the board could have arrived at a definite opinion as to conditions under which respondent operated July 14, 1941; and it does not attempt to make any finding in connection with that matter. Furthermore, the evidence tends to prove that the only real estate purchased by respondent for the use in its business, since 1941, consists of two vacant lots adjoining 709 Linwood Boulevard; and these lots were acquired and are being used in compliance with the provisions of an ordinance of Kansas City adopted in 1943. Respondent has also added a shed to protect loading opera-

tions; but permission therefor was given by the board, according to the record brought here by Kansas City. The board's finding as to unlawful acquisition of additional property is, therefore, contradicted by its own records, and by the record before us.

The city rests the legality of its cease and desist order on the provisions of the ordinance of 1923 which, it says, were carried over into the ordinance of 1941 by implication. We cannot so hold. The limiting provisions of the 1923 ordinance were repealed and they were not re-enacted in 1941. Whether or not they were valid conditions, which is questioned by respondent, is of no concern at this time. They no longer exist. The test of the legality of the business conducted has been changed from that provided under the 1923 ordinance, to one provided under the 1941 ordinance. The only test now required is: "Was it legally operating such a business at that location on July 14, 1941?"

Unless the language of the 1923 ordinance must be read into the 1941 ordinance we cannot sustain appellant's position in this case for we cannot give the ordinance a meaning which its authors did not intend for it to have. We think if they had intended this language to be in the ordinance the council would not have dropped it from the revision. State ex rel. Klein v. Hughes, 351 Mo. 651, 173 S. W. 2d, 877. However, in order to construe the 1941 ordinance, it is not necessary that we consider the previous ordinance covering this subject, for the ordinance now in effect is clear and unambiguous. Voorhees v. Faust, 189 N. W. 1006, l. c. 1007. Therefore, whether we construe the 1941 ordinance with reference to previous enactments on the subject, or whether we read it alone, we must arrive at the same conclusion, to-wit: It does not prohibit noise and odors.

Appellant contends that the judgment of the lower court is too broad in that it authorizes respondent to conduct a U-4 business of a lower classification than the one now being considered in the property. The judgment, as rendered, is probably subject to such a construction.

The judgment should be reversed and the cause remanded with directions to modify the judgment so that it shall permit the operation of the business now conducted at 707-709 Linwood Boulevard, or any business of the same or of a higher classification, as the same is defined in the ordinance heretofore mentioned. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to modify the judgment so that it shall permit the operation of the business now conducted at 707-709 Linwood Boulevard, or any business of the same or of a higher classification, as the same is defined in the ordinance heretofore mentioned. All concur.